IsmoB Wassebvogel,
Spec. Ref. Plaintiff author seeks to recover from defendant publisher upwards of $5,600 for various alleged breaches of two contracts whereby defendant had the exclusive world-wide rights to publish two of plaintiff’s works, to wit, “ Quatrefoil ” and “ Derricks.” Defendant, by way of counterclaim, seeks to recover approximately $4,000 representing alleged legal fees, costs and disbursements in defending itself in two criminal actions concerning the book “ Quatrefoil.”
The material facts are not in dispute. Defendant admits that it withheld from plaintiff accrued royalties amounting to $2,790.44 from sales of “ Quatrefoil,” as set forth in plaintiff’s first cause of action. Likewise, as alleged in the second cause of action, royalties totalling $204.29 admittedly had accrued from sales of the book “Derricks” and were withheld by defendant from plaintiff. Defendant however, contends that pursuant to its contract with plaintiff, it had the right to retain such royalties to indemnify itself for expenses incurred from 1951 to 1955 in the defense of two Federal indictments which involved the book “ Quatrefoil.”
*944 The record shows that in 1951 defendant and two of its officers were indicted in the United States District Court for the District of Maryland for using the mails to advertise and distribute three allegedly obscene books. Two of these books were written by persons not here involved, and the third book named in the indictment, ‘ ‘ Quatref oil, ’ ’ was written by plaintiff and published by defendant. On October 9, 1953, a nolle prosse to this indictment was entered by the Government. Thereafter, in 1954, another indictment was returned in the United States District Court for the Eastern District of New York against defendant and the same two officers, charging, in a single count, that they had ‘ ‘ knowingly deposited ’ ’ obscene books and advertising matter in the mail. The same three books which were the subject matter of the prior indictment in Maryland were named in this indictment. On January 27, 1955, defendant entered a plea of guilty and paid a fine of $3,000. On motion of the United States Attorney, the indictment was then dismissed as to the two corporate officers, who executed affidavits whereby they agreed to cease publishing the three books.
At or about the same time, on the advice of counsel, defendant ceased selling plaintiff’s book “ Derricks,” although this work had not been involved in either indictment. The exclusive rights to this work, however, were never returned to plaintiff and on June 30, 1958, were sold by defendant to a third person not here involved. In his third cause of action, plaintiff seeks damages of $2,260 as a result of defendant’s refusal to continue to sell this book and also for the transfer of the rights thereto to a third person without first offering them to plaintiff.
Defendant’s purported authority to indemnify itself by retaining the royalties accruing to plaintiff is predicated upon the following two provisions of the contract between the parties concerning the book ‘ ‘ Quatref oil ’ ’:
‘ ‘ 3. The Author guarantees and represents that the said work is original; that it has not heretofore been published in book form or otherwise; that it contains no matter that is libelous, obscene, lewd or unlawful. The Author further agrees that he will not, during the continuance of this agreement, without the written consent of the Publisher, write, print, or publish, or cause to be written, printed, or published, any revised, corrected, enlarged or abridged version of the said work, or in any wise assist or be interested in any such version, or in any book of a character that might interfere with, or reduce the sales of the work covered or contemplated in this agreement.
*945 ‘ ‘ 4. The Author further guarantees and represents that he is the sole Author and proprietor, and that he will hold harmless the Publisher against any suit or claim by reason of any violation of proprietary right, or because of any unlawful matter contained in said work.” (Emphasis added.)
The only express provision with respect to charging defendant’s expenses against royalties due plaintiff, however, is set forth in paragraph 5 of said contract, to wit: “ 5. The Author agrees to deliver to the Publisher * * * a copy of the manuscript complete and satisfactory in content and in form, together with all necessary drawings, charts and designs, and index, if such index is required and proofs are available for compiling it. If the Author fails to supply all such drawings, charts, designs and index the Publisher may have them made, and charge the cost thereof against any royalties due by the Publisher to the Author. The expense incurred by the Publisher in making any alterations or corrections in any proofs from final copy shall, if made pursuant to the Author’s direction, be borne by the Author and charged against his account, if such changes shall exceed 10% of the total cost of composition of the work.” (Emphasis added.)
Assuming at this time that defendant had a right of indemnification for expenses incurred by it as a result of the two Federal indictments, there is, nevertheless, nothing in any of the provisions of the “ Quatrefoil” contract which legally permit or authorize it to offset royalties due plaintiff against any expenses other than those specifically set forth in paragraph 5 thereof (supra). It is significant that no similar provision concerning royalties as a source of indemnification was set forth as part of the “hold harmless ” clause in paragraph 4 of this contract (supra). The “ Quatrefoil ” contract was on a form prepared and provided by defendant. Such contract, therefore, must be strictly construed against it (Gillet v. Bank of America, 160 N. Y. 549; Tanenbaum v. Hallett, 269 App. Div. 174, 177). Inasmuch as defendant explicitly stated in its contract those conditions in which it had the right to withhold plaintiff’s royalties as a setoff against specific expenses, no additional right with respect thereto may now be implied by the court. It necessarily follows, therefore, that defendant was not entitled to retain plaintiff’s royalties as indemnification for expenses incurred by it as a result of the two Federal indictments under any of the relevant provisions of the contract above set forth.
Moreover, in the opinion of the court, nothing in paragraphs 3 or 4 of the contract entitles defendant to indemnify itself for *946 defending criminal charges brought because of its oivn intentional and felonious conduct, which conduct was clearly admitted by its plea of guilty to the second indictment (see Morgan v. Greater New York Taxpayers Mut. Ins. Assn, 305 N. Y. 243, 248; Messersmith v. American Fidelity Co., 232 N. Y. 161, 165; 6 Williston, Contracts [Rev. ed.], § 1751).
The significant language of the ‘ hold harmless ’ ’ clause in paragraph 4 (supra) is that plaintiff, in effect, will indemnify defendant against any suit or claim arising as a result of ‘ any unlawful matter contained in said work.” Despite the two indictments, there has never been any adjudication or legal determination that plaintiff’s works, which were published by defendant, contained “ unlawful ” matter. The indictments, in and of themselves, are no proof on this subject. In the absence of such determination, therefore, defendant’s alleged claim to the right of indemnification under the “ hold harmless ” clause of paragraph 4 is without merit.
An examination of the indictments clearly establishes that defendant and its officers were indicted, not for any ‘ unlawful ’ ’ matter contained in plaintiff’s book, but solely because of their own independent acts of sending the book and alleged obscene advertising matter which it had prepared through the mail. Under the Federal statute, defendant’s personal knowledge of the purported obscenity of the matter it deposited in the mail is the essential element of the alleged crime (U. S. Code, tit. 18, § 1461). Thus, regardless of the provisions of paragraphs 3 and 4 of the contract, it is well-settled law that no one may obtain indemnification for expenses in defending the alleged criminality of his own intentional acts (Messersmith v. American Fidelity Co., supra). I hold, therefore, that defendant is not entitled to reimbursement from plaintiff for its attorneys’ fees and other expenses incurred as a result of the two Federal indictments.
I further hold that defendant unlawfully retained plaintiff’s royalties in order to recoup the fine imposed upon it after, by its plea of guilty, it had admitted the truth of the charges that it had intentionally violated Federal laws. Contrary to defendant’s contention, to extend the coverage afforded by the ‘ ‘ hold harmless ’ ’ clause of the contract, to encompass indemnification against unlawful acts perpetrated by the defendant itself, would, in the opinion of the court,, violate the established public policy of this State (Morgan v. Greater New York Taxpayers Mut. Ins. Assn., supra).
Assuming arguendo, however, that defendant had a right of indemnification, the record nevertheless fails to establish the loss, if any, which is assessable against plaintiff’s royalties. It *947 was shown that defendant withheld royalties from the authors of the other two books named in the Federal indictments. Upon the trial of this action, however, defendant failed to indicate the amounts so withheld or whether they were insufficient to defray the fine and legal expenses it had incurred and for which it seeks reimbursement from plaintiff. Thus, the court is unable to determine what indemnification, if any, would be apportioned to moneys due plaintiff.
Plaintiff’s third cause of action is based upon the following provision of the contract between the parties concerning the book “Derricks.” “14. Whenever the demand for the work shall not, in the opinion of the Publisher, be sufficient to render its further publication profitable, and it shall so give notice and not otherwise, the Author shall have the right to buy from the Publisher, as an entirety, the publishing rights at a reasonable price, not exceeding Five Hundred ($500.00) Dollars, all bound copies on hand at twenty-five per cent (25%) of the catalog retail price, all sheet copies at twelve per cent (12%) of the catalog retail price, and the plates (if plates were made and if they have not already been melted) at one-tenth (1/10) their original cost. In the event that the Author shall fail to purchase the publishing rights, plates and copies of the work as aforesaid within two (2) months after notice is mailed to his last address on the Publisher’s books, this contract shall terminate, and thereupon the Publisher shall have the right to dispose of the property as it sees fit, without obligation to pay any commission or royalty, and free of any further responsibility under this contract.” (Emphasis added.)
The record clearly establishes the breach of this provision by defendant. Although it ceased publishing the book on advice of counsel, as above stated, defendant never gave the required notice to plaintiff that he had ‘ ‘ the right to buy from the Publisher, as an entirety, the publishing rights at a reasonable price,” or at any price. Thus, the sole issue remaining to be determined with respect to this cause of action is the amount of damages sustained by plaintiff. The only proof in the record upon which the court can calculate damages with any reasonable degree of certainty is the fact that after defendant sold the rights to “Derricks” to another publisher, 3,300 copies of it were sold. Plaintiff’s royalty rate on the sale of 5,024 copies of “ Derricks ” by defendant was $.332 per copy. Multiplying 3,300 by this rate, fixes the damages at the sum of $1,095.60.
Accordingly, judgment is rendered in favor of plaintiff against defendant on the first cause of action for $2,790.44, with interest thereon from the due dates set forth in plaintiff’s Exhibit 12; *948 on the second canse of action for $204.29, with interest thereon from the due dates set forth in plaintiff’s Exhibit 12; and on the third cause of action for $1,095.60, with interest thereon from February 1, 1958.
Judgment is also rendered in favor of plaintiff against defendant dismissing the counterclaim on the merits.
Settle judgment within 10 days on three days’ notice. Defendant may have a 30-day stay of execution.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.